UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STOLEBARGER,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | Case No. 17-cv-06161-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS STATE LAW CLAIMS**<br><br>Re: Dkt. No. 22 |

Plaintiff Robert Stolebarger alleges that defendant Prudential Insurance Company of America wrongly denied his claim for long-term disability (LTD) benefits under a Policy he secured through his former law firm. The only issue before me on Prudential's motion to dismiss is whether Stolebarger's state law claims are preempted by ERISA and must be dismissed. That question, in turn, depends on whether I may look to Policy documents that, according to Prudential, demonstrate that the Policy is governed by ERISA and does not fall within a safe harbor provision that would otherwise preserve Stolebarger's state law claims. I conclude that I may review and rely on the Policy documents and that Stolebarger's state law claims are preempted and, therefore, DISMISSED with prejudice.

## BACKGROUND

### I.  OCCUPATION AND ONSET OF DISABILITY

Prior to the onset of his alleged disability, Stolebarger was a "litigation partner at a major international law firm, handling as lead counsel large and complex antitrust, intellectual property, and cyber security cases for several of the largest, most sophisticated, and most prestigious companies in the United States." Complaint ¶ 9. In 2008, he was diagnosed as suffering from depression and anxiety. *Id*. ¶ 14. He sought help from a highly-regarded and board-certified

neurologist and psychiatrist, and attempted to continue his practice through early 2011. *Id*. But starting in March 2011, he experienced a series of serious anxiety attacks that prevented him from performing his work as a trial lawyer; he was placed on a leave of absence by his firm in August 2011. *Id*. ¶¶ 15-18. With medication and treatment, he resumed some work, although not in his regular occupation but in more of an administrative role through 2013. *Id*. ¶ 22. By 2014, after attempting to resume work in his "regular occupation" as a litigation trial lawyer, it was clear to him that he could not continue with that work and he was placed on short-term leave by his firm (Bryan Cave) from November 2014 through June 2015, when it was contemplated that he would submit a LTD claim to Prudential (assuming no change in his condition). *Id*. ¶¶ 25-29. When July 2015 ended, Stolebarger, his doctor, and Bryan Cave "remained unanimously of the view that Mr. Stolebarger was unable to return to work. Unable to work, he submitted his claim for benefits (which would provide significantly less income than he had been earning as a trial lawyer) to Prudential in August 2015." *Id*. ¶ 30.

## II. LTD POLICY & PRUDENTIAL'S DENIAL

Bryan Cave offered Stolebarger the opportunity to purchase and Stolebarger purchased his LTD Policy from Prudential. He alleges that at all relevant times: (i) his premiums were paid entirely by him, with no contribution from Bryan Cave; (ii) participation in the Policy and purchase of the Policy were completely voluntary for all Bryan Cave personnel; (iii) the sole functions of Bryan Cave in connection with the Policy were to permit Prudential to publicize the program to Bryan Cave personnel and to collect premiums through payroll deductions and remit them to Prudential; and (iv) Bryan Cave received no consideration in connection with the Policy, with the possible exception of reasonable compensation for administrative services actually rendered in connection with payroll deductions. Complaint ¶¶ 33-38.

Stolebarger submitted his LTD claim to Prudential in August 2015. *Id*. ¶ 53. In November 2015, Prudential denied his claim because it determined that he was able to perform his job functions. *Id*. ¶¶ 53, 57. Stolebarger appealed Prudential's denial of benefits on May 4, 2016, and again on March 24, 2017. *Id*. ¶¶ 64, 72. Prudential finally denied his second appeal on May 5, 2017. *Id*. ¶ 73.

Stolebarger filed this Complaint in October 2017, and asserts claims under California law for breach of contract, breach of the covenant of good faith and fair dealing, and for violation of California's Unfair Competition Law (UCL).  In the alternative, he asserts a claim for violation of the Employee Retirement Income Security Act of 1974 (ERISA). Prudential moves to dismiss only his state law claims, arguing that they are preempted by ERISA and relying in part on alleged Policy documents explaining the governing terms.  Stolebarger opposes, arguing that whether the Policy at issue is governed by ERISA is disputed and cannot be decided on a motion to dismiss and, in any event, his section 17200 UCL claim is not preempted.

**LEGAL STANDARD**

ERISA expressly preempts state laws "insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a) except for state "law[s] ... which regulat[e] insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).  In addition, in light of ERISA's comprehensive scheme of civil remedies to enforce ERISA's provisions, any state law cause of action "that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme." *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005).

However, under ERISA's safe harbor provision, insurance policies will not be considered ERISA-governed plans if the policy offered by an insurer to employees satisfies four criteria: "(1) No contributions are made by an employer or employee organization; (2) Participation the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs." 29 C.F.R. § 2510.3-1(j).  The Ninth Circuit has "uniformly adopted the position that a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy

3

any one of the four requirements of the safe harbor regulation." *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir. 2000).

The parties dispute whether the Prudential Policy at issue here falls within that safe harbor, thus preserving the state law claims, and whether that issue can be resolved when the Complaint alleges that all four safe harbor criteria are met but Prudential relies on documents which it contends govern the Policy and show as a matter of law the safe harbor criteria are not all met.

**DISCUSSION**

**I.  THE PRUDENTIAL PLAN DOES NOT FALL WITHIN THE SAFE HARBOR**

**A.  The Governing Documents**

In moving to dismiss the state law claims, Prudential relies on documents attached to the Declaration of Jane Edwards, Dkt. No. 22-1. According to Prudential and Edwards: (i) Exhibit A is the Group Insurance Contract (Group Contract) for the Bryan Cave Policy; (ii) Exhibit B are amendments to the Group Insurance Contract; (iii) Exhibit C is a copy of the LTD Booklet-Certificate issued under the Group Contract and applicable to partners under the Group Contract; (iv) Exhibit D is the LTD Booklet-Certificate applicable to legal assistants and administrative staff under the Group Contract; (v) Exhibit E is the LTD Booklet-Certificate applicable to associates, directors, counsel, and staff lawyers; (vi) Exhibit F is the LTD Booklet-Certificate applicable to the Chief Operating Officers and principals; and (vii) Exhibit G is the LTD Booklet-Certificate applicable to Of Counsel and Of Counsel independent contractors.

Prudential argues that these documents are appropriate for my review on this motion because their terms are incorporated by reference as governing documents of the Policy. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan. . . ."); *see also Greger v. Unum Group*, 2016 WL 7495477, at *1 (C.D. Cal. Apr. 8, 2016) (rejecting argument that because plaintiff's claims were not based on other certificates, the court could not consider those other certificates as incorporated on a motion to dismiss). It points out that Stolebarger quotes in his Complaint substantial portions of the Policy as explained in Exhibit C, the LTD Booklet-Certificate applicable to Partners under the Group Contract.

4

Complaint ¶¶ 39-46 (Partner Booklet). Prudential also notes that in Exhibit A, the Group Contract, the certificates (Exhibits C – G) are expressly incorporated into and "made a part of the Group Contract." Group Contract at 2.

Stolebarger admits that Exhibits A & B are properly considered under the doctrine of incorporation by reference,[1] but objects to incorporation and my reliance on Exhibits C-G (Additional Documents) because he never saw those Additional Documents and those documents are not mentioned in the Complaint. Oppo. at 6; Declaration of Robert Stolebarger (Dkt. No. 23-1), ¶ 2. He also argues that the Additional Documents may not be authentic, may not be relevant to this dispute, and reliance on them would impermissibly turn this motion into one for summary judgment before Stolebarger has the opportunity to take discovery about their "authenticity and effect." Oppo. at 6. At oral argument, however, Stolebarger's counsel admitted that Exhibit C *can* be relied on because it *was* a document that had been produced to plaintiff and quoted in the Complaint.

**B.    The Safe Harbor**

Putting aside Exhibits D-G and reviewing only Exhibits A-C, the exhibits Stolebarger admits may be incorporated by reference, it is clear that the Policy does not fall within ERISA's safe harbor.

Exhibit C is the "Bryan Cave LLP Partners Long Term Disability Plan." Ex C at pg 1. At pages 42-47 of the Plan is the "Summary Plan Description." The SPD "is not part of the Group Insurance Certificate. It has been provided by your Employer and included in your Booklet-Certificate upon the Employer's request." *Id*. at 41. The SPD goes on to identify the Plan as being governed by ERISA, the Plan Sponsor as Bryan Cave LLP, the Plan Administrator as Bryan Cave LLP, the agency for service of legal process as Bryan Cave LLP, and Prudential as the Claims Administrator. *Id*. at 42-43. These facts establish that Bryan Cave "endorsed" the Policy; therefore, the Policy falls outside of the safe harbor under 29 C.F.R. § 2510.3-1(j)(3).

It is true that merely identifying an employer as the "plan administrator, plan sponsor, and

---

[1] Oppo. at 7 n.1.

5

agent for service of process" does not, standing alone, compel a finding that a plan falls outside the safe harbor. *See Zavora v. Paul Revere Life Ins. Co*., 145 F.3d 1118, 1121 (9th Cir. 1998). But there are additional facts here. The Policy is referred to as the "Bryan Cave" plan. *See Hansen v. Contl. Ins. Co*., 940 F.2d 971, 974 (5th Cir. 1991) (plan was referred to by employer as "our plan"). And the SPD describing the plan as one governed by ERISA was "provided and included" at Bryan Cave's request. *See Zavora*, 145 F.3d at 1121 (fact that plan summary was prepared by insurer indicated plan could fall within safe harbor).

The contents of Exhibit C (that have been incorporated by reference and are no longer objected to by plaintiff) demonstrate that the Policy falls outside the safe harbor provision despite plaintiff's attempt to plead the contrary. *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

Although I do not need to rely on them, Exhibits D-G likewise support this conclusion. In particular, the Booklet-Certificates for three categories of Bryan Cave employees establish that Bryan Cave paid the premiums of those employees' coverage under the LTD Policy. *See* Exs. D-F (non-Partner Booklets) at 2; 29 C.F.R. § 2510.3-1(j)(1).[2]

The Policy at issue is governed by ERISA as a matter of law. Therefore, state law claims that fall within the scope of ERISA's remedial scheme are preempted.

## II. UNFAIR BUSINESS PRACTICES CLAIM

Stolebarger argues that if I reject his safe harbor argument, his Section 17200 UCL claim is still not preempted and should be allowed to proceed because through that claim he seeks to vindicate not only his own interests, but those of others whose LTD coverage claims were improperly denied by Prudential. Oppo. at 8-11.

Stolebarger first argues that his Section 17200 claim falls outside of ERISA's express

---

[2] Stolebarger objects to the incorporation of these exhibits on the grounds that he has not had the opportunity to depose anyone at Prudential or Bryan Cave about the "authenticity and effect" of these documents. However, he points to no reason why the Edwards Declaration does not adequately authenticate the documents for purposes of the incorporation by reference doctrine. For example, he points to nothing in the Exhibits that he now admits can be considered (A-C) or in Exhibits D-G to show that Exhibits D-G may not be what Edwards purports them to be.

1   preemption provision because while Section 17200 is not codified in California's Insurance Code,
2   it is regularly applied to unfair business practices in the insurance industry. Oppo. 9-10. However,
3   to fall under ERISA's savings clause, the state law at issue must be "specifically directed toward
4   entities engaged in insurance" and "the state law must substantially affect the risk pooling
5   arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*,
6   538 U.S. 329, 342 (2003). Section 17200, which is codified in California's Business and
7   Professions Code and applies broadly to all business practices, satisfies neither of those criteria.
8   *See Irigaray Dairy v. Dairy Employees Union Loc. No. 17 Christian Lab. Assn. of the U.S. of Am.*
9   *Pension Tr.*, 153 F. Supp. 3d 1217, 1256 (E.D. Cal. 2015).

10  As to conflict preemption, a state law claim is completely preempted by ERISA if the state
11  law claim meets a two-prong test. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d
12  941, 947 (9th Cir. 2009) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)). The first
13  prong is whether the claim could have been brought under ERISA, and the second is whether there
14  is another legal duty, independent of ERISA, that is implicated by a defendant's actions. *Id*. at
15  947-49.

16  Stolebarger argues that the existence of an ERISA plan is not a critical factor in his Section
17  17200 claim and, therefore could not have been brought under ERISA. That is so, according to
18  Stolebarger, because his claim that Prudential has a practice of wrongfully denying LTD mental
19  health claims does not depend on whether the policies Prudential acted under were governed by
20  ERISA and in asserting this claim he is not attempting to recover benefits for those wrongly
21  denied but merely to stop Prudential's unfair practice.

22  Stolebarger's claim falls squarely within the holding of *Cleghorn v. Blue Shield of*
23  *California*, 408 F.3d 1222, 1226 (9th Cir. 2005). There, the Ninth Circuit found a purported class
24  claim under Section 17200 conflict preempted where "[t]he only factual basis for relief pleaded in
25  Cleghorn's complaint is the refusal of Blue Shield to reimburse him for the emergency medical
26  care he received. Any duty or liability that Blue Shield had to reimburse him 'would exist here
27  only because of [Blue Shield's] administration of ERISA-regulated benefit plans.'" *Cleghorn*,
28  408 F.3d at 1226 (quoting *Davila*, 124 S.Ct. at 2498). Here, whether Stolebarger's claim was

wrongly denied (which he asserts it was as part of a pattern by Prudential) depends upon the terms of his ERISA-governed Policy. His standing, therefore, to bring the wrongful denial claim is based on whether Prudential complied with his ERISA-governed LTD Policy. Whether or not Prudential has a pattern of wrongly denying other claims will likewise turn on the terms of the underlying policies, many if not most will be ERISA-governed policies.

Finally, that plaintiff intends to seek broader relief under his section 17200 claim – to enjoin Prudential's "wrongful denial practice" – does not save this claim from preemption. Plaintiff fails to identify any duty arising under state law, *separate and apart from* the duties Prudential bore under his ERISA-governed Policy, that was violated by the wrongful denials of benefits. *Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 417 (9th Cir. 1990) (preemption applied where plaintiff was "not claiming that Prudential or the doctors had any duty to her outside the proper administration of the benefit plan. There would be no relationship or cause of action between the appellees and Gibson without the Plan. Thus, in this case, the claim originates from the handling and disposition of Gibson's claim for disability benefits and is directly connected with the Plan.").[3] Even if he could identify a duty wholly separate from those imposed by ERISA, he still has a standing issue because his own claim falls squarely within the duties imposed by ERISA under his ERISA-governed Policy. *Cleghorn*, 408 F.3d at 1226 ("Even the class claim does not aid Cleghorn, for he is a participant in an ERISA plan and brings his action on behalf of others similarly situated. Cleghorn's claim therefore cannot be regarded as independent of ERISA.").

Plaintiff's Section 17200 UCL claim is preempted.

## CONCLUSION

Defendant's motion is GRANTED and plaintiff's state law claims are dismissed. Because

---

[3] Plaintiff argues that the duty at issue is an "independent legal duty" under California's Insurance Code to "make good faith determinations on the merits," but doesn't show how that allegedly independent duty is separate from the duty imposed by ERISA under his Policy.

8

there are no facts that plaintiff could assert to save these claims from preemption, the state law claims are DISMISSED WITH PREJUDUCE.

**IT IS SO ORDERED.**

Dated: May 18, 2018

William H. Orrick
United States District Judge